**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| MARIA PEREZ JUAREZ, | * | |
| Petitioner, | * | |
| v. | * | Civil No. 26-3109-BAH |
| ROBERT GUADIAN ET AL.,[1] | * | |
| Respondents. | * | |

* * * * * * * * * * * * * *

**ORDER**

Petitioner Maria Perez Juarez ("Petitioner") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition") on August 7, 2026. ECF 1.[2] Respondents filed an opposition, ECF 8, with attachments including the notice to appear, ECF 8-1; the I-200 arrest warrant, ECF 8-2, Immigration and Customs Enforcement's ("ICE's") notice of custody determination, ECF 8-3; and a screenshot of the Executive Office for Immigration Review automated case information, ECF 8-4. Petitioner filed a reply, ECF 9, attaching affidavits of Petitioner, ECF 9-1, and her counsel, ECF 9-2, as well as a screenshot of the ICE detainee locator website, ECF 9-3. Respondents filed a supplement consisting of the I-213, record of deportable/inadmissible alien. ECF 10. The Petition is ripe for disposition, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2025).

---

[1] Robert Guadian is substituted for Vernon Liggins as the Baltimore Field Office Director for Immigration and Customs Enforcement ("ICE") pursuant to Fed. R. Civ. P. 25(d).

[2] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page, even where they conflict with party-supplied page numbers.

The Petition alleges that Perez Juarez is a native and citizen of Guatemala and lawfully entered the United States in 2025 on a valid B2 visitor visa. *See id.* at 6 ¶ 17. She has remained in the United States since that time, does not have any known criminal history, and has not previously been in immigration proceedings. *Id.* ¶¶ 18–19. She was arrested by ICE officers in the early morning of August 6, 2026, in Laurel, Maryland, after she "was stopped on the side of the road selling food to a client from [her] car."[3] ECF 9-1, at 1 ¶ 3; *see also* ECF 8, at 2; ECF 10, at 3. While the parties dispute some of the facts related to the arrest, they agree that a collision between Petitioner's car and an ICE vehicle occurred and that Petitioner was thereafter transported to the hospital before being transferred to the Baltimore Hold Room. *See* ECF 9-1, at 1–2 ¶¶ 4–14; ECF 10, at 3. She is currently detained at Otay Mesa in California. *See* ECF 9-1, at 2 ¶ 15; ECF 9-2, at 1 ¶ 3; ECF 9-3.

Petitioner provides a sworn affidavit wherein she attests that a client of her food-selling business "noticed there were two black, unmarked vehicles near[by ] and told [Petitioner] he thought they might be ICE vehicles."[4] ECF 9-1, at 1 ¶ 3. Petitioner contends that as she was leaving in her car, the two unmarked vehicles started following her, as well as a third. *Id.* ¶ 4. Petitioner attests that "[a]s [she] was driving, one of the unmarked vehicles pulled up on the left side of [Petitioner's] car, getting very close to [Petitioner's car]. Another vehicle was behind

[3] The Petition alleges that Petitioner was arrested while working as a DoorDasher. ECF 1, at 6 ¶ 20. Petitioner's subsequent affidavit clarifies that she was arrested while selling food out of her car. *See* ECF 9-1, at 1 ¶ 3.

[4] Petitioner's sworn declaration was signed on August 20, 2026, by counsel for Petitioner on Petitioner's behalf. ECF 9-2, at 2. Petitioner was detained in California at the time the declaration was signed, thus making it extremely difficult for counsel (who works in Baltimore) to secure Petitioner's actual signature on the sworn declaration. *Id.* at 1 ¶ 15. The Court will treat the declaration as signed by Petitioner herself as she attests that its contents were read to her "in Spanish, a language [she] understand[s]" and because Petitioner declares "under the penalty of perjury" that the information in the declaration is "true, complete, and correct." *Id.* at 2.

[Petitioner]. The third vehicle drove past [Petitioner] very quickly and cut [Petitioner] off, causing [her] car's front bumper to collide with the vehicle's rear bumper." *Id.* Petitioner then contends that:

> After [her] car collided with the vehicle, men got out of the unmarked vehicles. They jumped over their vehicles toward [Petitioner] and at least one man started pointing his gun at [Petitioner]. The men were screaming at [her] in English. [She] was scared because [she] thought the men were probably from ICE and [she] had seen a lot of aggressive ICE officers in the news. [She] didn't want them to hurt [her], so [she] opened [her] car door, raised [her] hands in the air, and positioned [her]self so that [her] legs were hanging out of [the] car. They yelled at [her] to stay in [the] car.

*Id.* ¶ 5. Petitioner "stayed in [the] car for a few moments, but then the men violently grabbed [her] by the arms and ripped [her] out of [the] car. They hit [Petitioner] several times before putting [her] in handcuffs." *Id.* ¶ 6. At no point during this encounter "did the men ask [Petitioner] any questions," including for her name or identification. *Id.* at 2 ¶ 9.[5]

Respondents provide a heavily redacted I-213 dated August 7, 2026, to support their version of events. *See* ECF 10. An unnamed individual, who the Court presumes to be a deportation officer,[6] summarizes the arrest occurring at "8750 Cherry Lane, Laurel, Maryland, United States," ECF 10, at 2, as follows:

> At approximately 0720, Officers observed a green Chevy trailblazer bearing Maryland tag 4GX3827 in the enforcement operation area. A query of law enforcement databases revealed that the registered owner Maria Celeste Perez JUAREZ, a 30-year-old citizen of Guatemala, has no lawful status in the United States[.] Officers conducted a vehicle stop near 8750 Chery Lane in Laurel, MD 20707, effectively boxing in JUAREZ's vehicle in an attempt to make contact. However, JUAREZ accelerated forward, colliding with officer vehicle, and subsequently reversed onto the curb, which rendered her vehicle inoperable. Upon

[5] Disturbingly, Petitioner also attests that after she was handcuffed at the scene, her strapless dress had slipped down her chest and she remained exposed for a period of time, unable to cover herself, until one officer "[e]ventually . . . pulled [her] dress back up[.]" ECF 9-1, at 1 ¶ 6.

[6] All the signature blocks on each page of the I-213 are blacked out. *See* ECF 10, at 1, 2, 3, 4, 5, and 6. Only the signature block on page 2 refers to the signer as holding the title of deportation officer. *See id.* at 2.

> approaching the vehicle, officers had to break the front driver side window due to her noncompliance with commands. Following this, JUAREZ was arrested and transported to the Baltimore field office after being cleared from Laurel regional Hospital without further incident.

*Id.* at 3.

In Count I, Petitioner alleges a violation of her Fifth Amendment due process rights, asserting that "all three *Mathews* [*v. Eldridge*, 424 U.S. 319 (1976)] factors weigh heavily in favor of holding that Respondents' refusal to provide her any due process whatsoever in her arrest and detention violates her right to procedural due process." ECF 1, at 7–8. Count II alleges violations of 8 U.S.C. §§ 1226(a) and 1357(a)(2), as well as the Fourth and Fifth Amendments. *See id.* at 9–11. For the reasons discussed below, the Court finds Petitioner's warrantless arrest did not comport with the requirements of 8 U.S.C. § 1357(a)(2) and her detention is therefore unlawful under § 1226(a).

The INA permits that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). In relevant part, under 8 U.S.C. § 1357(a)(2), an ICE agent may, without a warrant, "arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest[.]" Regulations permit immigration authorities "to interrogate, without warrant, any alien or person believed to be an alien concerning his or her right to be, or to remain, in the United States[.]" 8 C.F.R. § 287.5(a)(1). Regulations further provide that "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained." *Id.* § 287.8(c)(2)(ii). "At the time of the arrest, the designated immigration officer shall, as soon as it is practical and safe to do so . . . (A) [i]dentify himself or herself as an immigration officer who is

authorized to execute an arrest; and (B) [s]tate that the person is under arrest and the reason for the arrest." *Id.* § 287.8(c)(2)(iii).

Petitioner contends that she was not arrested "on a warrant" and that her warrantless arrest did not comport with statutory requirements, 8 U.S.C. § 1357(a)(2), so her detention is not authorized by law. *See* ECF 1, at 9–11. Relief, therefore, turns on whether the circumstances justified a warrantless arrest under § 1357(a)(2), and, if not, the precise timing of the issuance of the warrant in relation to Petitioner's arrest.

Respondents argue generally that "Petitioner was detained in a manner consistent with the statutes and regulations." ECF 8, at 5. It is not clear, however, whether this conclusion is based on a contention that Petitioner's arrest was pursuant to a warrant or whether her arrest was warrantless, but permissibly so. Neither argument persuades.

Respondents assert that "[b]efore the officer could question Petitioner as to her right to be, or remain in, the United States, Petitioners [sic] attempted to evade the ICE ERO officer by colliding with his vehicle and attempting to reverse away." *Id.* at 5. First, this argument relies on a generous reading of the unsworn summary of the encounter by an unknown person, the value of which is severely undercut by the conflicting account of Petitioner, made under oath. The undisputed record indicates that Petitioner's vehicle was boxed in by unmarked vehicles. *See* ECF 9-1, at 1 ¶ 4; ECF 10, at 3. Respondents' summary of the events does not indicate at which point the federal officials identified themselves as ICE agents. *See* ECF 10, at 3. Even crediting Respondents' assertion that reversing her car after being boxed in constitutes flight, it is implausible that the agents could have identified themselves before that point, meaning before the agents stopped Petitioner's vehicle and exited their unmarked vehicles. Petitioner attests that after she was boxed in and the collision occurred, she suspected that the men were ICE agents, so she

attempted to comply with their commands, *see* ECF 9-1, at 1 ¶ 5. The record indicates, therefore, that once it became clear to Petitioner that the men surrounding her were ICE agents, she did not attempt to flee.

At the same time, Respondents also appear to assert that the "arrest" did not occur until after Petitioner had been taken to the hospital. *See* ECF 8, at 5 ("Petitioner was transported to the hospital *and then arrested* and transported to the Baltimore Field Office after being cleared from the Laurel Regional Hospital." (emphasis added)). Crediting this assertion, Respondents' argument of flight risk holds even less water. Respondents do not contend that Petitioner tried to flee during the time spent in the hospital, time which unquestionably afforded Respondents ample opportunity to get a warrant. There is no evidence in the record that Petitioner attempted to flee after the arresting officials were identified as ICE agents.

Even assuming the officers had reason to believe Petitioner was not in the United States lawfully,[7] the facts here do not justify a warrantless arrest under § 1357(a)(2). *See Acevedo Sanchez v. Liggins*, Civ. No. 26-2345-JRR (D. Md. filed June 12, 2026), ECF 18, at 38 (transcript of July 23, 2026, hearing) (finding no probable cause to arrest petitioner without a warrant where "the uncontested evidence [reflected] that officers approached Petitioner in an unmarked vehicle not wearing clothing indicating that they were law enforcement and failed to announce their

[7] The record is not clear what "law enforcement databases" were "quer[ied]" or how the results led to the conclusion that Petitioner, "the registered owner [of the car whose registration the officers had run] has no lawful status in the United States." ECF 10, at 3. In another case before this Court with similar factual circumstances, Respondents argued they had probable cause to believe the petitioner was in the country without lawful status because database "checks came back negative"—checks that presumably would have come back negative if conducted as to citizens. *See* ECF *Acevedo Sanchez v. Liggins*, Civ. No. 26-2345-JRR (D. Md. filed June 12, 2026), ECF 18, at 36–37 (transcript of July 23, 2026, hearing) ("It is unclear to me how a negative result, i.e. no hit, on each of these searches leads one to believe a person is in this country unlawfully. I, too, would have a negative hit for each of these database checks.").

purpose or affiliation" and where the officers had petitioner's vehicle registration). "Immigration officers presumably could have obtained [Petitioner's] home address for further service of a Notice to Appear," if they did not already have it, "or to arrest [her] after obtaining a warrant, as required by law." *Santos Gomez v. Guadian*, Civ. No. GLR-26-3078, 2026 WL 2546049, at *4 (D. Md. Aug. 28, 2026) (emphasis in original).

While not entirely clear, Respondents appear to argue that the fact that a warrant was *eventually* issued is sufficient to satisfy statutory and regulatory obligations. *See* ECF 8, at 5. The arresting ICE agents appear to have only encountered Petitioner by chance, as there is no indication she was the target of enforcement operations. Like the factual circumstances in a similar case before Chief Judge Russell, "[t]he officers appear to have been performing random checks of vehicle registrations and cross-referencing the registered owner with immigration and criminal databases." *Santos Gomez*, 2026 WL 2546049, at *4. Only after conducting that random check of Petitioner's car did the officers stop Petitioner. *See* ECF 10, at 3. The Court is satisfied that the record establishes that Petitioner was arrested before the I-200 warrant was issued.

Courts, including this one, have found this fact alone to be enough to establish a violation of statutory arrest authority and—consequently—detention authority. *See Alberto C.M. v. Noem*, 817 F. Supp. 3d 735, 739 (D. Minn. 2026) ("Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a)." (citations omitted)); *Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1226 (D. Colo. 2025) (finding "the *post hoc* warrants had no legal effect" and rejecting "the notion that an I-200 warrant issued either *after* or *concurrent* with an arrest made without an assessment of individual flight risk transforms an unlawful warrantless arrest into a lawful, warranted one"); *Castanon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 851 (N.D. Ill. 2025) ("The Court rejects ICE's invitation to interpret these regulations in a

manner that would provide ICE with the legal authority to pursue its policy of issuing I-200 warrants to collaterals in the field. This is so because such a policy would largely (if not entirely) negate 8 U.S.C. § 1357(a)(2), which provides ICE officers with the authority to arrest without a warrant any foreign national with probable cause that the person is in the United States in violation of any immigration law and 'is likely to escape before a warrant can be obtained for his arrest.'"), *aff'd in part, rev'd in part on other grounds sub nom. Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 175 F.4th 828 (7th Cir. 2026); *Santos Gomez*, 2026 WL 2546049, at *3 (finding that ICE officers did not comply with regulatory and statutory requirements under similar circumstances); *Matute Garcia v. LaRose*, No. 26CV4075-GPC(SBC), 2026 WL 2211804, at *2 (S.D. Cal. July 31, 2026) ("A *post hoc* warrant after forty-eight hours does not comply with 8 U.S.C. 1226(a) and cannot support Petitioner's detention."); *Tut-Xol v. Guadian*, Civ. No. GLR-26-3105 (D. Md. entered Aug. 31, 2026), ECF 11, at 4–5 (same) (citing, e.g., *Gavilan Sanchez v. Liggins*, Civ. No. MJM-26-2346 (D. Md. filed June 12, 2026), *Acevedo Sanchez v. Liggins*, Civ. No. JRR-26-2345, ECF 18).

Because the Court finds that Petitioner's arrest was warrantless and not sanctioned by § 1357(a)(2), immediate release is the appropriate remedy. *Santos Gomez*, 2026 WL 2546049, at *4 (collecting cases "that have found that noncompliance with 8 U.S.C. § 1357(a)(2) and its implementing regulations requires immediate release because an individual cannot be lawfully detained under § 1226(a) where the explicit warrant requirement is not satisfied").[8]

[8] Respondents argue that 8 U.S.C. § 1226(e) forecloses this Court's jurisdiction to hear "Petitioner['s] challenge[ to] ICE's decision to arrest him [sic] and keep her detained." ECF 8, at 6. That section provides: "The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e). But this decision does not resolve a challenge to a discretionary decision to detain a noncitizen. It resolves a challenge to the

Accordingly, it is this 4th day of September, 2026, by the United States District Court for the District of Maryland hereby ORDERED that:

(1) Petitioner Maria Perez Juarez's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, ECF 1, is GRANTED as to Count II, alleging violations of 8 U.S.C. §§ 1226(a) and 1357(a)(2);

(2) Respondents are directed to RELEASE Petitioner Maria Perez Juarez from immigration custody forthwith;

(3) Respondents are directed to file a status report by Tuesday, September 8, 2026, confirming compliance with this order;

(4) The Clerk is directed to SUBSTITUTE Robert Guardian for Vernon Liggins; and

(5) The Court shall RETAIN jurisdiction of this matter to enforce compliance with this order.

Dated: September 4, 2026

/s/
Brendan A. Hurson
United States District Judge

lawfulness of an arrest. Section 1226(e) does not apply. *See Acevedo Sanchez v. Liggins*, Civ. No. 26-2345-JRR, ECF 18, at 38 (transcript of July 23, 2026, hearing) (rejecting argument that § 1226(e) precludes jurisdiction over challenge to arrest); *Leal-Hernandez v. Noem*, 803 F. Supp. 3d 409, 420 (D. Md. 2025) (finding § 1226(e)'s jurisdictional bar inapplicable where petitioner did "not challenge any discretionary decision made under § 1226").